Good morning, Mr. Guerin. Good morning, Your Honor. I'm Clark Guerin, and I represent the plaintiff, Jeanette Sadowski, and I would like to say that I'd like to reserve 10 minutes for rebuttal. The first thing I'd like to do is ask if the panel has any questions. Well, yes. It seems to me that whether or not this judge may have acted in excess of the jurisdiction he had, but he's a criminal courts judge with subject matter jurisdiction to deal with post-sentencing matters and is therefore under existing law entitled to immunity. Well, Your Honor, I would respectfully disagree with you. I'm sure you do. That's why I'm giving you the chance to tell me why. Because let's start with something basic. The Supreme Court said pretty much judges are immune from anything unless they don't have jurisdiction, if they act in a clear absence of all jurisdiction. And that's what law is. We take a few words that seem to have very plain and simple meaning, and they mean different things to different people depending on where you're looking at it. Okay. So here the judge misinterpreted a State law precedent, and he thought that his power to revise was a two-way street, but it was only a one-way street, basically. Well — He had an absence of jurisdiction. He acted in excess of his jurisdiction. But how can you say it's in that category of a clear absence that would vitiate his immunity? Judge Gold, the record of what happened later is what illustrates what he was doing. Even when he got an order from his Nevada Supreme Court, in my client's case, telling them, judge, you have no jurisdiction, you didn't enter a written order. Why don't you enter a written order and, in essence, fix the case so we don't have to deal with it anymore? Not only — he just didn't follow the directive of his own court after he had complete notice that he had acted in excess of his jurisdiction. Well, I'm not sure if acting in excess of your jurisdiction is not — doesn't vitiate immunity, why does it vitiate it because it happens twice? I mean, two times zero is still zero. Well, that's my point, Judge. The — I think if we look to the standard of those cases in the Second Circuit out of New York where they said you got really two questions, would a reasonably prudent judge acting under the same or similar circumstances have thought he had jurisdiction? I go back to something basic. Every law student, every first-year law student learns that when there's a final judgment, your jurisdiction over the case terminates. Now, there — you mentioned post-sentencing. And Steinberg doesn't indicate that because it said, look, the right thing to have done here was to proceed on a probation revocation. I mean, of course the court — of course any criminal court judge has got jurisdiction to deal with post-sentencing matters. Yes. I mean, he just does. But they have that jurisdiction because an allied Nevada legislature passed a law and told them so. They fashioned the key to the court. They gave them a key to the court that said in post-conviction proceedings, you can do these things. As long as you're doing these things, you have a key to go into the court. And they very specifically excluded as one of the things that a judge could do was to resentence the defendant. She was brought in, Your Honor, on a proceeding to revoke her probation. The judge had jurisdiction clearly to revoke her probation. Resentencing the defendant is a completely different procedure than revoking probation. It's almost the same as if I filed a lawsuit for a slip-and-fall case. And then when I come into court, I start arguing about an airplane crash. They're completely different cases. And it's a completely different thing. Now, this is not a justice of the peace. This is a criminal court judge who went to law school, who had been on the bench for 20-some years. I don't know how long he practiced prior to that. And the idea that your fashion, the fashion of your jurisdiction is limited, I think, is very clear. And he didn't. It's clear he could, if there was a mistake and it would lead to a lower penalty, he could have had jurisdiction to correct, right? Yes, but. Is that correct? That is correct, Your Honor. How? Just let me finish my question. If that's correct, but he thought that it was something that would go in both directions, in other words, he thought that he'd made a – there was a mistake on a premise as to her criminal record and that there should have been a larger sentence. Why isn't that just the kind of mistake that leads to an error, you know, that would be reversible? But why does it mean he's got no judicial immunity? Why is that a clear absence of jurisdiction when he's misinterpreting the law? Two reasons, Judge. Number one, this was a proceeding the State brought to revoke probation. It was not a proceeding the State brought to correct an illegal sentence. And number two, more importantly, that was an exception that was created by judicial law, and there's one key element to it. The Court only has jurisdiction to correct a sentence that, number one, works to the extreme detriment of the defendant and, number two, does not increase the sentence. Those are the other limits of that jurisdiction. And he sure – he misinterpreted the law for certain. But let me ask you another question so you at least will have some time to think about this while your colleagues are arguing the other side. But shifting directions to the – another defendant, to the corrections official? Yes. So a corrections official gets the order of the judge and carries it out. And that person, as I understand it, gets sued here also. Yes. How can that possibly be correct? In other words, how could a corrections official be expected to make a legal decision that the judge was in error and I'm not going to follow the judge's order? That seems sort of like a bizarre – I don't mean to insult your science theory, but to me it just seems so weird to think that a corrections official would have discretion to disobey the judge's order. I'm not getting that as to why there shouldn't be absolute immunity for the corrections official. Well, let me say number one, and I don't want to not answer your question because I will. Number one, I have said all along, if Judge Mosley has immunity, everybody else does too. Let's assume that Judge Mosley doesn't have immunity. Let us assume that. For just a moment. For perhaps my question. Yes. I believe that – I felt that was a very valid position. However, I do feel the director of prisons does have the duty to seek relief. Let me give you some additional – Director of prisons you think should be liable civilly for following the judge's order? Let me answer your question this way by giving you some other information. I arranged for this lady to go out on house arrest. When the probation officer who was charged with her custody looked at her record, he said, there is a mistake here. This sentence can't be legal. And he went about looking how to fix it. Now, you know, inmates – and I'm as guilty as everybody else. We tend to believe people who are involved in the criminal system aren't terribly truthful. I didn't believe what this lady was saying until the probation officer gave it validity. Now, if the probation officer who was in charge with her custody realized that this was an illegal sentence, certainly somewhere along the line, that department – he was working for Director Crawford – somewhere along the line, they have an obligation to do something other than just say, well, I'm just going to roll along with the – Not exactly roll along with. It's follow a court order. But let's say we made an order in this case, and we were absolutely – we were just wrong. And you later got the Supreme Court to say we were not just wrong, we were sort of goofily wrong. Something that they have said frequently with the Ninth Circuit. Well, the clerk of the Ninth Circuit issued a mandate in accord with our order. Could the clerk of the court be wrong for following what the judge has said? You know, the remedy is appeal the judge's order. Well, Your Honor, I'm also saying – remember, we're dealing with prisoners who have limited ability. What I'm suggesting is if the prisoner were ill, the director of prisons would have an obligation to get her – get him or her medical care. What I'm saying – and my case, we've got to take the facts as I pled them. The facts I pled were that she had actual knowledge this was an illegal sentence, that she was holding them under an illegal sentence. Now, once she has knowledge of that, I think she has an obligation to take some effort, get an attorney, do something to raise the issue. That's what I'm saying. Not just go execute a sentence that, according to my complaint, she had actual knowledge was an illegal sentence. Well, it's an interesting issue. And I want – as long as you raise it, I want to make clear. The complaint as I filed it, I don't like the way it is on that issue. I made clear to the trial court that I would like leave to amend it on the issue of Director Crawford to better plead it. We – in view of his ruling on Judge Mosley's immunity, that wasn't really anything necessary to do. I was glad that instead of repleading it, he issued his ruling so we had something to appeal. And – but I wanted to make it clear that if the panel does grant us relief, that is something that we – I do know we need to clean that up so it makes a little bit more sense. And Your Honor does understand at least the novelty of the theory. It is interesting. Mr. Guerin, you said you wanted to save some time. Yeah, I'm going to do that now. Okay. Go over. Good morning. May it please the Court. My name is Tom Gover. I represent Judge Mosley and Director Crawford in this matter. I also have a co-counsel here who represents the prosecutors that were involved in this case. This was kind of a shotgun blast of a complaint. It really had all kinds of theories all over the place, alleging claims against State officials for damages in 1983 and whatnot. But I believe that we've gotten to the crux of the matter and really pared it down to whether or not Judge Mosley was acting outside the complete – completely outside of all jurisdiction in this case. One thing that I do want to clear up is that there is some – even as I hear arguments today, there is some kind of meshing of the timeline. We talk about a revocation of probation, but we're not talking about which one. And so I want to clear that up really quick. We had one judgment of conviction that was entered in June of 2000, the one where Ms. Sadowski was sentenced to a gross misdemeanor. In November of 2000, November 20th of 2000, came the second judgment of conviction. This is the time that I believe that is alleged in the complaint that Judge Mosley is acting in complete absence of all jurisdiction. You read further in the complaint. You get to paragraph 19 of Mr. or Ms. Sadowski's complaint. And she concedes that the only allegations of conduct, that only the allegations of conduct in paragraphs 14 and 15 are the actions which Mosley is not acting with the benefit of common law, judicial immunity. Suppose the operative event is the post-sentencing. This resentencing on November 20th. I mean, what difference does that make? The only reason why I raise that is that it seems the theory of the case for Ms. Sadowski is that he was sentenced after this Steinberg case came out, that she – I understand, but what difference does Steinberg make on the issue of whether the Court had subject matter jurisdiction? I don't think it makes any issue. I think looking at my understanding of Stump v. Sparkman and how this Court has applied this classic judicial immunity case law in this circuit, I really don't see how you would have any problem in finding that Judge Mosley was acting within his – at least within the ballpark of his jurisdiction, especially when we have concepts that are – you know, judicial immunity is supposed to be interpreted broadly, that, you know, it's not lost even when we're dealing with someone who's acting in excess of their jurisdiction or maliciously or corruptly. That's just simply not the case that we have here. You know, I can refer the Court to the transcripts when we're looking – I'm pretty familiar with what the record shows. Okay. And so, you know, basically, I would believe that the panel's view of the record is what impressed me. This is a judge that may – although eventually was found out to be wrong, that there was some actual judge-type work going on here. There was discussion going back and forth. He was acting as a judge. He was, like I said, at least within the ballpark of his jurisdiction. The – regarding Director Crawford, I believe she even stands in a stronger position than Judge Mosley. We have an executive official who's in charge of the prisons, who receives a judgment of conviction. That's no different than any judgment of conviction that she receives. And all the people that she takes into her prison, she executes that, takes that person into her custody and places her in custody. I really believe the Patterson case law out of the Eighth Circuit really hit it on the head, and I'll refer the Court to that case law in this particular case. I believe all those policy interests that they talked about in Patterson apply in this case. We don't want these people who are executing judicial orders to be the lightning rods of the complaints of disgruntled inmates or people who have actual complaints with a judge. We – I believe the Patterson policy decisions really apply in this case. We don't have any authority in the Ninth Circuit, I don't think, any legal precedent in our circuit saying that if an official follows an order of this sort, an order that's later shown to be illegal, that the official still has an immunity. No. I don't think we have anything particularly on point. Absolute immunity. Right. So we don't have a precedent like Patterson. No. And the social worker. No. Actually, Patterson was a prison official in the Eighth Circuit. Now, what we do have closely that mirrors Patterson in the Ninth Circuit, I believe, is Coverdale. I think Coverdale, you know, uses some of the same buzzwords for policy, talking about we don't want, you know, these people. And I believe Coverdale was a social worker. We don't want these types of people to be the lightning rods of, you know, you know, litigation that's really targeted against a judge who has judicial immunity. Patterson's a prison warden. That's correct. I assume you agree with Mr. Guerin that if there's judicial immunity for Judge Mosley, everything else follows. Yes. And I think the immunity goes even further than that. Okay. You were straightening out the dates. Now, what is your position on what went on in 2003 when finally the Supreme Court of Nevada had to tell the judge, enter a written order, and had to tell the corrections department, release her at once? Do you think those delays are at issue in this case or not? No, I don't. I mean, at that point in time, there is no doubt that the Court is acting within its clear jurisdiction, ruling on post-conviction motions. But the other point, I do a lot of ---- Well, I mean, ruling by denying, I mean, there's this curious thing of not issuing a written order. The judge has to be told to issue the order that will be effective. That seems a very strange delay on the judge's part. Actually, it's kind of common. Sometimes they don't get out the findings of fact, conclusions of law, and that's what's operative on the Nevada Supreme Court for them to drive jurisdiction. As a state habeas court practitioner, I do see that notation or that order from the Supreme Court happen occasionally where a judge doesn't, you know, get a final written order. I would say the tone of the Nevada Supreme Court is one of considerable impatience. Well, and I believe the Nevada Supreme Court rightfully found that Judge Mosley had no jurisdiction in this particular case, that he, you know, wrongfully sentenced her, and the Nevada Supreme Court eventually wants, you know, eventually she had a remedy. Now, you know, I could see on one hand how somebody could have a concern about, well, how come it took so long for the Nevada Supreme Court to spring her. But we also have to see that the petitioner herself really doesn't have clean hands in that aspect of things. Because at the time that she was resentenced, back in November 20th of 2000, right, that's when the alleged violation of her double jeopardy occurred, right? But she was given probation. Obviously, maybe she thought, I'm off on my merry way. I don't care about these things. But it took a couple of years before she ever challenged this unlawful sentencing. And so, yes, the Nevada Supreme Court, the tone might have some impatience with Judge Mosley. Yes, Judge Mosley was eventually found wrong. But I don't believe that we have a case here where Judge Mosley is acting clearly outside all of his jurisdiction. You say it's common, but the way the Nevada Supreme Court speaks is that the judge has declined to enter such an order apparently on the grounds that it presently lacks jurisdiction to do so. Well, that must have been the order between the – apparently there was some language about communication between Mosley and Crawford. Is that what the concern that you're referring to? This is when she's trying to get out in 2003. And I believe, according to the Nevada Supreme Court narrative of things, that that the judge had entered an order for her to leave, but maybe it wasn't sufficient for director. He hadn't given an order. He had not made a written order. He just stonewalled. If something's unappealed, does the trial court in Nevada have jurisdiction because it doesn't in the Federal system? They don't. Once it's unappealed, they're divested of jurisdiction. So I'm going to reserve some time for my colleague here. You're not going to explain this? Are you unfamiliar with it or what? I understand. I read the order. If you want, we can take a look at it right now. Which – where on the record are you looking at? I think it's 223. I'm reading the Supreme Court of Nevada. No, I think it's volume 2. 223. And where are you referring to? Well, it's the paragraph that begins on February 10th, 2003. Right. It says the district court entered an order directing appellant to be released immediately upon posting a $100 cash bail. Then the footnote says it's not a written order. And in the – right. Let's see. It appears the district court has yet to enter it.  Those are two separate things. The order immediately releasing the appellant, that was presented to the Department of Corrections, but because the Department of Corrections works on judgments of convictions, written orders, whatnot, they wouldn't release her. It was a meaningless thing. And I suppose he must have known that. Well, and as my understanding is that at this point in time, the refusal of the district court to enter that written order was because that notice of appeal had already been put on and that he had lost jurisdiction at that point in time. The footnote is talking about a written order, but it's – they require that written order so that they have a record of what is on appeal so that they actually have jurisdiction, too. And so I think this – the failure of this written order to be finally realized, even though the court made an oral order, I don't think that gets to our issue of whether or not he's entitled to judicial immunity way back in November 20th of 2000. We're talking – You're saying this is irrelevant, even though it's – I think it's irrelevant probably, too, though somewhat indicative of his state of mind. It's irrelevant. I don't know how indicative of his state of mind of it three years ago, though, but maybe being – dealing with this three years in, you know, in the future, maybe there was some perturbedness there. But, again, judicial immunity, we're talking about, you know, people who are – and in no way do I believe Mosley is acting in this manner in this particular case, but, you know, malicious, corrupt people, that's not what we have here. And so I will go ahead – unless there's any other questions, I will defer the remainder of my time to my co-appellee. Thank you very much. Ms. Barker. Barker. Good morning, Your Honors, and may it please the Court. My name is Stephanie Barker. I represent the prosecutorial defendants in this case, former District Attorney Stuart Bell, current District Attorney David Roger, and Clark County. Based upon appellant's concession that judicial immunity would extend to the prosecutorial defendants at the lower court, and then again in the briefing here, the lower court did not address the issues of prosecutorial immunity in entering its ruling because it found judicial immunity. This Court reviews this case de novo, and therefore we have briefed that issue. It is the position of the prosecutor's office that all of the conduct that is alleged to have been offending to this particular appellant is conduct that was within the course and scope of prosecuting the case in the criminal process, as part of the judicial process, in the advocacy function of the prosecutor's office. The request for felony sentencing, the placement of a request for revocation on calendar, the opposition of a motion to correct a legal sentence are all judicial or are all prosecutorial functions within the judicial process in the courtroom context. There is no conduct that is alleged that would be outside that context. If the Court has questions dealing specifically with the prosecutorial immunity issues, I'm happy to address those. I don't think so. Thank you very much. If there's any remaining time, I'll be happy to turn it back over to Mr. Kennedy. Okay. Mr. Garan. First thing I want to do very briefly is answer your question, Judge Noonan. The $100 in the immediate release was on a bail proceeding. He had agreed to grant her bail, and that was part of a failed overall settlement with the state and the county. So that really is not relevant to your... No. The footnote where they told him to file a written order, that was on the motion to correct the illegal sentence. And I do think that has a lot of significance, because they gave him 10 days to file a written order. He never did it. And that was part of my points. He had that emergency stay from the Nevada Supreme Court. He was pretty well told, you had no jurisdiction. We're setting her free now. You ought to set her free. You didn't enter a written order. You still got jurisdiction to fix it. Go file a written order. So what happened then? He did nothing. Then what happened to your client? Well, the Nevada Supreme Court eventually issued an order in July that set her free. And she was out on a bail release in those few months. So that's what you mean by the second time they told him he had no jurisdiction? No, that was actually the third time. The first time was 71 days before he revoked her probation and put her in jail. He had gotten an opinion in another case, Ryan Scott Steinberg, that said, Judge, you got jurisdiction to revoke probation. You do not have jurisdiction to re-sentence people. 67 days later, he had her before him on a revocation of probation. He imposed the sentence he now knew was illegal. Then he got the order from the Nevada Supreme Court, this emergency order of February, telling him again, okay, we're setting her free. You should have set her free, but we're saying, Edward, we're tired of this. Let her free. And why don't you file a written order? And then he didn't do that. And then in July, they set her free. What I want to spend my little bit of time left addressing are all of the other people who nobody has done anything to fix their sentences on. The difficulty with that is that you don't have – your client doesn't have standing. Once her sentence is resolved, that's that. Well, but, Your Honor, what about the counting of Riverside v. McLaughlin case? That has to do with mootness. This is not a mootness problem. This is a standing issue. And if at the time you pursue injunctive relief, you – your problem's been solved. Your problem's been solved, hasn't it? Well, Your Honor, one thing I want to point out is that this was a refiling of a prior case. This case was first filed January 7th of 2003 while she was still in custody. Yes, which you couldn't do. Yes. I assume it's heck barred. Well, it was – it was a bad case. No, no, no, I don't mean a bad case. I mean it's just a heck problem. Well, yeah, it was a – it was a problem, but we didn't file it. My point is – There's a – there's a case that says you can't file a 1983 action that has to do with conditions of confinement. I understand that. I found that out as we went through – I found that out as we went through the case. The point is that I think it's trying to come into the counting of Riverside cases. We – you know, constructively, we started a period of remedy as in Riverside, and then she was set free. That's the point I'm trying to make. Okay. I agree that that action was not the – was certainly not technically correct. The judge gave me leave to file a habeas corpus petition by the time – the day – actually, we had withdrawn it before he did that. He just didn't know it because the Nevada Supreme Court had acted to set her free. But the point is, why is this court looking around? Why are they doing this? One of the reasons they're doing this is all this publicity. And this is the one final thing I want to say about the judicial system in the state of Nevada, the Supreme Court. Now, the first time they give that opinion in Ryan Scott Steinberg, they had no reason to know that Judge Mosley wouldn't go ahead and follow their law. The second time he did it, by the time they gave him an emergency stay, they said, hey, file a written order. You can't do this. Then in July, by the time they issued their opinion in July, he still hadn't given a written order. They were pretty well on notice that he was likely to keep doing this. And why didn't they have that opinion published? Why didn't they order that published so all these other people who are confined, who are sitting in Nevada prisons trying to go through things proper, instead of having to guess and do an analysis, why didn't they file a written opinion? So they could at least find a case that said, gee, yeah, we're held here illegally. And I understand what you're saying with the jurisdiction. I disagree with you, Your Honor. I think that the County of Riverside v. McLaughlin case is exactly about this situation because once the case is started, they get her free and try and deprive her of standing. But that's one of the nice things about being a lawyer. I just have to make the arguments. And that's one of the things that bothers me about this case the most. I used to sit as a judge pro tem. I heard small claims cases. I probably sat 20 years ago. And I still sometimes wake up at night wondering if I did the right thing. What really bothers me is that we have prison officials, we have a district attorney, we have an attorney general, we have a judge, who now by any other shadow of a doubt knows there are people sitting in jail illegally. And why isn't someone doing something about it? I couldn't sleep at night if I knew that somebody was sitting in jail, having 100 eyes watch them when they do everything they do, no privacy, behind cells, if I knew that I had put them there illegally. And I understand that running a criminal court, a criminal master calendar, is one of the more unpleasant jobs in our judicial system. I have sat and watched Judge Mosley's courtroom. I've watched his calendar. There isn't enough money in this world to get me to do that job. It is a very difficult job. But we are supposed to live in a country where the end doesn't justify the means. And I don't believe that Judge Mosley was – I think he thought he was doing the right thing. He thought, I've got to protect the good citizens of my county from these criminals. But irrespective of intent, we're supposed to live in a country where the end doesn't justify the means. And I've done everything I can do to present it. I'm hopeful that Your Honors will find some way to help my client and these other people. All right. Thank you, Sharon. Thank you, counsel. The matter just argued to be submitted.
judges: Noonan, Rymer, Gould